ALLING *against* SHELTON :

#### IN ERROR.

If an issue in fact be joined on a plea in abatement, and tried by the jury, and found against the defendant, the judgment should be peremptory, and not *respondeas ouster;* and if the judgment, in such case, be *respondeas ouster,* and not peremptory, it is erroneous.

The object of a writ of error being to redress an injury, which the complainant

*New-Haven,*
July, 1844.

Alling
*v.*
Shelton.

has sustained, by the error of the court, it can be brought only by the party who has been aggrieved by the judgment.

Therefore, where the error complained of, was, that the court, in an action of replevin for goods taken by attachment, after a trial on the merits, and a verdict for the defendant, rendered judgment, that the defendant recover his costs, without any assessment of damages against the plaintiff, or order for the return of the goods; it was held, that a writ of error would not lie in favour of the plaintiff, to reverse such judgment.

The decision in *Loomis* v. *Tyler,* 4 *Day,* 141. on this point, overruled.

This was a writ of replevin, brought by *Chester Alling* against *Charles T. Shelton,* to obtain the possession of goods belonging to the plaintiff, which had been taken, by a writ of attachment in the defendant's favour, against *Leverett Alling.* In connexion with the writ of replevin there was a count in trepass.

In the county court to which the suit was brought, the defendant pleaded in abatement, that said writ of replevin was issued without any notice to the defendant being served on him, that it was about to issue, that he might appear before the authority about to issue the same, and be heard relative to the amount of the bond and the sufficiency of the surety, offered by the party applying for said writ of replevin. The fact alleged in the plea in abatement, was traversed by the plaintiff; on which issue was joined to the jury. After a trial before the jury on this issue, they returned a verdict for the plaintiff. The court accepted the verdict, and thereupon rendered judgment that the defendant *answer over* to the plaintiff's declaration.

The defendant then avowed the taking of the goods mentioned in the declaration, and pleaded in bar of the action, that they were the property of *Leverett Alling,* the defendant in said writ, and not the property of the plaintiff, as alleged in the declaration. He therefore prayed judgment, if the plaintiff ought to maintain his action thereof against him; and he also prayed a return of said goods and chattels to the officer who attached them, by virtue of said writ. The plaintiff traversed the allegations in this plea; and thereupon issue was joined to the jury. On this issue, the cause was tried, and the jury returned a verdict in favour of the defendant, to recover his costs. The court accepted the verdict, and rendered judgment, in the terms of it, that the defendant recover his costs.

After the verdict was returned, and before judgment thereon, the defendant waived, disclaimed and remitted to the plaintiff all debt and damages to him accruing, and to which he was entitled, upon the issue so found by the jury, as well as a return of said goods and chattels to the officer by whom they were attached, as claimed in the defendant's avowry and plea.

The plaintiff brought a writ of error in the superior court, assigning for error, 1. that the court should have rendered judgment in chief for the plaintiff, and ordered the jury to assess damages, upon the issue in fact found for him on the plea in abatement, and should not have ordered *respondeas ouster ;* 2. that the court should not have rendered judgment for the defendant, on his avowry and plea, for costs only, without any judgment or order for the return of the property, or any assessment of damages. The case was reserved, by the superior court, for the consideration and advice of this court.

*Mix,* for the plaintiff in error, contended, 1. That upon the issue in fact on the plea in abatement found for the plaintiff, the court should have rendered judgment that he recover damages, to be assessed by the jury, and not *respondeas ouster.* As the defendant had gone to the jury upon this issue, and had failed, judgment should have been peremptory. This is the law of *Connecticut,* long since established, and never overruled. 1 *Root,* 566. 1 *Sw. Dig.* 613. *Gould's Plead.* 300. This is the rule of the *English* common law. *Com. Dig. tit.* Abatement. I. 15. 2 *Wms. Saund.* 211. *n.* 3. and cases cited. It is also the rule in our sister states. *McCartee* v. *Chambers,* 6 *Wend.* 649. *Haight* v. *Holly,* 3 *Wend.* 258. *Boston Glass Manufactory* v. *Langdon,* 24 *Pick.* 49. *Dodge* v. *Morse,* 3 *N. Hamp. R.* 232. *Moore* v. *Moreton,* 1 *Bibb,* 234.

2. That the court erred in rendering judgment, on the second verdict, for costs only, without assessing damages, or ordering the goods to be returned. This was an imperfect judgment, and the error of the court. Since *Beecher's* case, 8 *Co.* 58. *b.* the law has been settled on this subject. It was recognized as the law of this state, by a unanimous decision of the nine judges in 1810, in the case of *Loomis* v. *Tyler,* 4

*Day,* 141. Judge *Swift* considers it as settled law. 1 *Sw.*
*Dig.* 791. It is not to be questioned now, because it is set-
tled. It is enough that such is the law. But the rule is well
founded. It is fit that a judgment should be regular and per-
fect. If it is not so, it must be reversed. This is according
to analogous decisions. *Nichols* v. *Palmer,* 5 *Day,* 47.

3. That the *remittitur* should not have been received.
There was no debt or damages to be remitted. The doctrine
of *remittitur* applies where more damages are found than are
demanded in the declaration. *Smith* v. *Brush,* 11 *Conn. R.*
362. But here are no damages found. Hence, the writing
does not confirm or rectify any prior proceeding in the cause;
but the reception of it was itself an error.

*C. A. Ingersoll,* for the defendant, contended, 1. That in
this state, where an issue in fact on a plea in abatement, is
found for the plaintiff, the judgment, in all cases, is that of
*respondeas ouster.* 1 *Sw. Dig.* 613.

2. That no one can sustain a writ of error to reverse an
erroneous judgment, but he who is *aggrieved* by that judg-
ment. It is on the ground that a party is aggrieved, that he
receives damages and costs. If he is not aggrieved, he has
nothing to complain of; and if he has nothing to complain of,
why should he be heard? *Hughes* v. *Stickney,* 13 *Wend.*
280. *William* v. *Gwyn,* 2 *Saund.* 46. *Medina* v. *Stough-*
*ton,* 1 *Ld. Raym.* 593. *Tey's* case, 5 *Co.* 38. The case of
*Loomis* v. *Tyler,* 4 *Day,* 141. was decided before costs were
given to the plaintiff in error, on reversal, as an aggrieved
party.

3. That if it would otherwise have been the duty of the
court, in this case, to render judgment for a return of the goods,
this could not be done after the *remittitur.* That became a
part of the record.

WILLIAMS, Ch. J. The plaintiff claims, that the judgment
below shall be reversed, because after issue joined, and tried
by the jury, and found for him, the judgment was not per-
emptory, but *respondeas ouster.*

That this judgment was not correct, according to the *Eng-*
*lish* practice, cannot be doubted. At an early period, this
question seems to have been settled, as appears by a case

cited in *Eichorn* v. *Lemaitre,* 2 *Wils.* 367. and confirmed by uniform decisions ever since. *Amcots* v. *Amcots,* T. *Raym.* 118. S. C. 1 *Sid.* 252. S. C. 1 *Vent.* 22. *Bonner* v. *Hall,* 1 *Ld. Raym.* 338. S. C. *Carth.* 433. *Crosse* v. *Bilson,* 2 *Ld. Raym.* 1022. *Medina* v. *Stoughton,* 1 *Ld. Raym.* 593. *Tompson* v. *Colier,* *Yelv.* 112. 2 *Wms. Saund.* 211. *n.* 3.

In our sister states, the authorities are not much less uniform. In *Massachusetts,* it is treated as settled law. *Boston Glass Manufactory* v. *Langdon,* 24 *Pick.* 49. And in *New-Hampshire. Dodge* v. *Morse,* 3 *N. H. R.* 232. *Jewett* v. *Davis,* 6 *N. H. R.* 518. In *Vermont,* the same final judgment is rendered, whether the issue is tried by the court or the jury. *Peach* v. *Mills,* 13 *Verm.* 501. So too in *New-York,* they have decided as in *Massachusetts. Haight* v. *Holly,* 3 *Wend.* 258. *McCartee* v. *Chambers,* 6 *Wend.* 649. And in *Pennsylvania. Hollingsworth* v. *Duane,* *Wal.* 154. *McHaffy* v. *Shore,* 2 *Penn.* 361. In *Kentucky,* the courts have come to the same result. *Moore* v. *Morton,* 1 *Bibb,* 234. And in *Indiana. John* v. *Clayton,* 1 *Blackf.* 54.

But it is claimed, that such is not the practice in this state. That parties have sometimes acquiesced in such judgments in this state, is certainly true ; but that this has been the uniform practice, is not true. It is certainly true, that if an issue in fact is tried by the *court,* and found against the defendant, the judgments have, for half a century, been *respondeas ouster. Fitch* v. *Lothrop,* 1 *Root,* 192. *Nichols* v. *Heacock,* 1 *Root,* 286. *Thomas* v. *Dorchester,* 2 *Root,* 124. But so far from impairing the common law rule as to the effect of a *verdict* upon such an issue, the judge, who assisted in these decisions, and reported them, puts it down among " points of law adjudged," that when the *court* determine the plea to be insufficient, the judgment is, that the defendant shall answer over to the action ; but if the issue is joined to the *jury,* and they find against the defendant, they assess damages for the plaintiff. 1 *Root,* 566. And such was the distinction taken by the superior court, in *Bird* v. *Thompson,* *Litchfield* county, 1801. MSS. of Judge *Mitchell.* And Judge *Gould,* though not satisfied with the distinction, speaks of its having been recognized by the supreme court of errors. *Gould's Pl.* 301. And Judge *Swift,* who, in his *System,* has laid it down as law, that a finding upon such an issue, whether by the court or jury,

would be final; (2 *Swift's Syst*. 204.) in his last work, speaking of our practice on trial by the court, (after laying down the common law rule,) says, this practice, *i. e.* of a *respondeas ouster* after issue to the court, unknown to the common law, has never received the sanction of the court of dernier resort. 1 *Sw. Dig*. 613. After the doubts suggested by these eminent judges, we ought to say, that the practice of not rendering a peremptory judgment, where the issue has been tried by the court, has been too long settled, and too often recognized by the superior court, to be disturbed at this late period.

On the other hand, we know of no such practice, much less of such decisions, as will justify us in departing from the common law rule upon verdicts of the jury. The reason of this rule is said to be, that the common law admits of but one issue to the jury. 1 *Sw. Syst*. 205. Another reason assigned is, that where a man pleads as true, a fact that he knows to be false, and a verdict be against him, it ought to be final; and every man must be presumed to know whether his plea be true or false. 2 *Wils*. 368. The true reason, we think, is, that pleas of this description are usually merely dilatory pleas, which it is the policy of the law to discourage: they are those required to be filed early, tried early, and not allowed to be amended and made conclusive, if the defendant will risk a trial by jury thereon. We think, therefore, the judgment must be reversed.

After this, it is not necessary for the purposes of this case, to go further; but as one of the grounds of objection to the judgment, is one of great practical importance, and has once been passed upon, by this court, we avail ourselves of this opportunity, when the rights of no one will be injuriously affected, to revise that opinion.

The error assigned to which we allude, is this. The plaintiff in error complains, that the jury gave costs only to the avowant, and against him; whereas they ought to have awarded to the avowant a return of the goods, or damages therefor; in support of which they cite the case of *Loomis* v. *Tyler*, 4 *Day*, 141. which fully justifies their claim. And although we have the utmost respect for the opinions of the court who decided that case, yet we cannot but think, that they gave more weight to the only case they cite in support of that decision, than from its merits it is entitled to; and as

the decision involves in it no practical results, which would render its stability important, we shall not shrink from reversing it.

The plaintiff in error then seeks to reverse this judgment, because the jury did not award against him damages, as well as costs. Under these circumstances, we cannot but think the inquiry made by one of the court, on a former occasion, was peculiarly appropriate—" What ground of complaint does this afford you ?"

The object of a writ of error, is, to redress an injury, which the complainant has sustained, by the mistake of the court. If false judgment be given, says an ancient writer, the party *grieved* shall have a writ of error. *Fitz. N. B.* 20. *b.* And *Littleton* says, " the writ lyeth when a man is grieved, by any error in the foundation, proceeding, judgment or execution of a court of record." *Co. Litt.* 288. And the form of writ, is, that manifest error hath intervened, *to the great damage of the plaintiff.*

Therefore, when trespass was brought against several, and one was acquitted, it was held, that he could not join with the others in a writ of error, for he cannot say it is to his damage. *Cannon* v. *Abbot,* 1 *Lev.* 210. *Parker* v. *Lawrence, Hob.* 70. In *Tey's* case, 5 *Co.* 38. 40. where a writ of error was brought to reverse a fine, it was held, that " a recoveror should not bring a writ of error to defeat the record in which he himself doth recover ; for the judgment in the writ of error, is, to be restored to all that he hath lost by the fine or judgment, and not to avoid and lose that he hath gained by the fine or judgment. 7 *Ed.* 3. 25. *b.* A man shall not reverse a judgment for error, if he cannot show that the error is to his disadvantage."

To the same effect is the law laid down, by the venerable *Fitz Herbert. N. B.* 21. Soon after came *Beecher's* case, 8 *Co.* 115. 117. where a writ of error was sustained in favour of a party who had withdrawn his action of trespass, and then sought to reverse the judgment against himself, because the court had not amerced him. The objection that the plaintiff in error could not complain of the judgment, not being injured, was urged. The court however resolved, that "it is true, that in process or delay, which is for the advantage of the party, he shall not assign it for error ; but in the case at bar

the judgment is not perfect, for the amercement ought to be parcel of the judgment; and it is also for the King's advantage." In other reports of the same case, the only reason assigned is, that it is for the King's benefit: it concerns the King's profit, and the public is concerned where the King is concerned. *Cro. Jac.* 211. *Jenk. C.* 283. (*a*) And in another case of the same character, the reason assigned is, that the judge of the piepowder court ought *ex officio* to provide, that the King's rights shall be preserved. *Jenk. C.* 211. The distinction taken seems to be where the error arises from some fault in the process or from the default of the court. 2 *Wms. Saund.* 47. *n.* 8. 1 *Gallis,* 28. 11 *Mass. R.* 383. But that an interlocutory erroneous judgment, which was for the advantage of the defendant, could not be taken advantage of by him, has been often determined. *Medina* v. *Stoughton,* 1 *Ld. Raym.* 549. 1 *Salk.* 211. 2 *Ld. Raym.* 970. *Fitz. N. B.* 20. *Beecher's* case is the only authority cited by the court, in *Loomis* v. *Tyler,* as the foundation of their decision; and the reason given by Lord *Coke,* is the reason relied on, *viz.* that the judgment is not perfect; or, as is said by the able editor of *Saunders,* it is *the default of the court.* But can it be said, that any erroneous judgment is a perfect judgment? And is not every such judgment through the default of the court? A judgment upon a plea of abatement, is as much a part of the record, and as much the act of the court, as a judgment in chief; and if, as is intimated, the irregularity of the record should be corrected by the court, when shown to them, we do not see why the one should not be corrected in the same manner as the other. A celebrated chancery judge says, that when the error in judgment is in chief, in that case, for the sake of regularity, the error may be assigned. *Kent* v. *Kent, Ca. temp. Hardw.* 51. Or, as is said in another report of the same case, it is the fault of the court, and differs from the case of too long an essoin, which is prayed by the party. 2 *Stra.* 973. Here, however, the party cannot be charged with the fault; for it is not the party, but the court, which has controul of the trial.

We believe, that the real ground of the decision in *Beech-*

(*a*) The maxim cited in support of this position, is,
     " *Quo ditior rex est, populus est tutior.*"

er's case, as is intimated in *King* v. *Lacey*, 8 *Conn.* R. 500. and in *Hughes* v. *Stickney*, 13 *Wend.* 280. was, that the court felt bound to regard the King's profit.   Such a reason cannot commend the decision to the approbation of this court. Whether that case is now law in *England*, seems to be doubted, by the supreme court of *New-York*, in the case above cited ; where Ch. J. *Nelson* says, a party may reverse his own judgment, *when he is aggrieved by it*, as he sometimes may be ; and in *England*, at one time, he might do so, although not aggrieved, for a reason since exploded, that the King should lose his fine, and the reversal was for his benefit.   It was expressly decided in *William* v. *Gwyn*, 2 *Saund.* 46. that a party shall not reverse his own judgment, unless he shows the error to his disadvantage.   13 *Wend.* 282.   In that case, however, it may be said, that the court issued the grand *cape*, at the request of the party, and so the case falls within the distinction above taken.

But in whatever light *Beecher's* case may now be regarded in *England*, we have the opinion of one eminent judge, in a case very analogous to this, and which seems decisive of it, so far as an opinion of an eminent judge is to be regarded. In *Gamon* v. *Jones*, on a writ of replevin, *Jones*, the avowant, recovered his damages and costs.   *Gamon*, the plaintiff, then brought his writ of error, "because there was no award in the judgment, that the defendant held the cattle irreplevisable."   The court held the judgment good, because in point of law, the return is irreplevisable, in all cases ; and *Buller*, J. added : "Besides, it is an invariable rule, that if a judgment be more favourable for the plaintiff than he is entitled to, he cannot take advantage of it, because he is not injured by it." 4 *Term* R. 510.   And Judge *Story*, in *McLemore* v. *Powell*, 12 *Wheat.* 554. when speaking of the judge's charge, says, the error, if any, was favourable to the defendant ; and therefore, it can form no subject of complaint on his part.   *P.* 556. That was not indeed the case of a judgment not perfect ; but the principle seems analogous.   And in looking over the recent reports from *Illinois*, this principle seems often recognized.   *Harmison* v. *Clark*, 1 *Scam.* 131.   *Schlencker* v. *Risley*, 3 *Scam.* 483.   So in *Indiana*.   *John* v. *Clayton*, 1 *Blackf.* 54.

In a question of this kind, where the opinion of this court

New-Haven,
July, 1844.

Alling
v.
Shelton.

has been once expressed, we should hesitate in overruling it, did we not think, not merely that it was incorrect, but that its effects would be injurious to the community.

An error has manifestly intervened; but the party who suffers by it, acquiesces in it; and the opposite party, who has received no injury, but an advantage, complains of it. Upon what known principle can he be heard? He does not complain, that he suffers by it; but he is allowed to complain for the honour of the law, to redress an irregularity in a judgment to perfect the record. In this he can have no more interest than any other citizen; and if this was important to the public, it should be done by a public officer, at public expense, and not be left in the hands of private individuals, where it would be seldom used, except to gratify malice, or as an engine of oppression. We take, therefore, this occasion, when the rights of no individual will be affected, to say, that we cannot acquiesce in the decision in *Loomis* v. *Tyler*. And although we advise, that the judgment in this case be reversed, it is for the former cause only.

In this opinion the other Judges concurred.

Judgment reversed.