Shaw v. The State.

## FRANCES SHAW v. THE STATE.

The rules regulating the granting of new trials on the ground of newly discovered evidence are the same in criminal prosecutions as in civil suits.

Where, in his motion for a new trial on account of newly discovered evidence, the party does not show that he used diligence in preparing for the first trial; or if he does not state that the evidence relied upon was unknown to him at the first trial; his motion must be overruled.

In a motion for a new trial, the defendant, convicted of a felony, stated that one of the jurors denied upon his *voir dire* that he had been present at the trial of defendant before the examining court, or had heard the testimony thereat; but that defendant could now prove by certain witnesses, whose affidavits accompanied the motion, that the juror was present as an auditor at the trial before the examining court. The statement of facts is silent as to what took place on the examination of the juror, and there is no bill of exceptions showing the action taken at that stage of the proceedings. *Held*, that under these circumstances, this court will not undertake to revise the ruling of the District Court in refusing the new trial.

In the examination of the qualifications of a juror, the parties are not confined to the interrogation of the juror himself, but may introduce other evidence.

See the opinion of the court, *in extenso*, upon the subject of new trials sought on account of newly discovered evidence, or because of the disqualification of a juror.

APPEAL from Galveston. Tried below before the Hon. James A. Baker.

The facts appear fully in the opinion. The appellant was convicted below, and sentenced to two years in the penitentiary.

*Manly & McLemore*, for the appellant.

*Attorney-General*, for the appellee.

REEVES, J.—The appellant presents three grounds for a reversal of the judgment, all of which are stated in the motion for a new trial which was overruled by the court and will be disposed of in the order in which they are presented by the motion.

"1. Since the verdict of the jury in the former trial Mrs. S. J. Allen, a resident of Galveston, Texas, has told the defendant that she knows the fact that she, the defendant, had in her possession and owned a large supply of coffee only some few months ago but prior to the date of the alleged offence against Mrs. Shaw, the defendant, and which is set forth more fully in the affidavit accompanying this petition." Mrs. Allen's affidavit is in accordance with the facts recited in the motion, and the further statement that the appellant had a large supply of groceries, including candles, sugar, molasses, &c.

That this point may be fully understood, it is proper to remark in this connection that the indictment charges that the appellant in the county of Galveston did, on the 24th day of December, 1864, "fraudulently receive and conceal two pairs of blankets, of the value of ten dollars for each pair, and one pistol of the value of twenty-five dollars, ten yards merino of the value of two dollars for each yard, and ten yards of calico of the value of one dollar for each yard, and fifty pounds of coffee of the value of fifty cents for each pound, and ten pounds of candles of the value of fifty cents for each pound, and fifty pieces of gold, each of the denomination of doubloon and each of the value of sixteen dollars." With the further averment that she knew that these articles had been stolen.

It will thus be seen that the defendant had full and distinct notice by the indictment of the various articles of property she was charged with having received and concealed.

It is not probable that the facts stated in the motion were confined to the knowledge of Mrs. Allen, or were unknown to others. She had, as Mrs. Allen says, a general supply of groceries, including other articles besides those mentioned in the motion for a new trial.   There is nothing disclosed that would warrant any other inference.   It is not shown even that the defendant did not know before the trial that the fact could be proved by Mrs. Allen. By art. 672, Code C. P., a new trial may be granted in a case of felony "when new testimony material to the defendant has been discovered since the trial."   A motion on this ground is governed by the rules which regulate civil suits.   These rules are too well settled to require any extended reference to authorities.   Graham in his Treatise on the Law of New Trials, after reviewing all the leading cases quotes from Judge Sutherland and adopts his opinion in the case of The People v. The Superior Court of New York, 5 Wend., 114, as expressing his own views on the subject as follows: "It has been shown that there are certain principles in relation to such applications which are clearly settled and well defined by long continued practice and an uninterrupted series of decisions in our own and other courts.   Those principles are: 1. That a party is bound and presumed to know the general leading points which will be litigated in his case.   2. That if he omits to procure evidence which with ordinary diligence he might have procured in relation to those points upon the first trial, his motion for a new trial for the purpose of introducing such testimony shall be denied.   3. If the newly discovered evidence consists merely of additional facts and circumstances going to establish the same points which were principally controverted before, or of additional witnesses to the same facts and circumstances, such evidence is cumulative and a new trial should not be granted.   In cases to which these principles clearly and unquestionably apply, the granting or refusal of a new trial is not a matter of discretion.   The parties have a legal right to a decision conformable to these principles.   Where there is a doubt upon the point of negligence, or as to the character of the evidence, or as to its materiality, it becomes a matter of discretion and the court will not—perhaps I

ought to say can not—rightfully interfere." (1 Graham & Waterman on New Trials, 489.)

In the case of Ewing v. Price, (3 J. J. Marshall, 521,) it was held necessary to show four things on a motion for new trial, on the ground of newly discovered evidence. "The names of the witnesses that had been discovered; that the applicant has been diligent in preparing his case for trial; that the new facts were discovered after the trial and will be important; and that the evidence discovered will tend to prove facts which were not directly in issue on the trial, and were not then known or investigated by proof." (Also, 2 J. J. Marsh, 52; Harrell v. Hill, 15 Texas, 270.)

It is clear that the application does not come within the rules of law authorizing a new trial, on account of newly discovered testimony. The facts proposed to be proved by this testimony were directly in issue on the former trial. No diligence is shown in preparing for the trial, nor is it stated that the new testimony was not known to the defendant before the trial, or any reason given that would authorize a reversal of the judgment for refusing the new trial.

The second ground for a new trial is, "that one of the jurors, Samuel Parr, who was on the panel that tried and convicted your petitioner, when he was asked under oath by the counsel for the defence, if he had attended the trial or heard the evidence in the investigating court in the case of the State of Texas v. Mrs F. Shaw, he, the said Parr, replied, 'that he had not been present at the trial and had not heard any portion of the evidence in the case;' and the defendant can now prove by Mr. F. Brenard, J. Taylor, J. and C. Burrow, that the said Parr was present at the trial, and within hearing of the proceedings of the court, as an auditor." The affidavit of two of the parties referred to, and of H. C. Burrows, supports the foregoing statement. It does not appear from the record what occurred on the examination of the juror touching his qualifications, or that any action was taken by the court at the time, or subsequently, except that the court overruled the motion for a new trial in which this matter relating to the juror was relied on as one of the grounds of the motion. This conduct of the juror, it is insisted in behalf of the appellant, ren-

48*

dered him unfit to sit on the jury, and also deprived the defendant of the right of challenge for cause to which she would have been entitled had he answered truly ; and that a new trial should for these reasons have been awarded. That this question may be seen in its full bearing, it will be necessary to notice so much of the statute relating to challenges and the formation of juries as may be found to be applicable to this point. It will be observed that the question put to the juror, however answered, would not establish his qualification as such, or the want of it, or render him liable to any one of the objections pointed out by the Code of Criminal Procedure as a ground for challenge for cause as distinguished from a peremptory challenge. The forms of the questions to be propounded to a juror on his *voir dire* examination are not prescribed, but certain causes are declared to be grounds of challenge when objected to a particular juror. In practice these causes are frequently made to assume the form of interrogatories, but not necessarily so, and any proper and pertinent question may be put, the answer to which would determine whether a cause of challenge did or did not exist ; or it may become the basis for further examination. For instance, if the juror should say "that from hearsay or otherwise, there was established in his mind such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict," it would be a case provided for by Art., 576, sub-division 6, Code Criminal Procedure. To ascertain whether this cause exists or not, the juror must be first asked, "whether in his opinion the conclusion will influence his verdict?" "If he answer in the affirmative, he shall be discharged." "If he answer in the negative, he shall be further examined by the court, or under its direction, as to how his conclusion was formed, and the extent to which it will affect his action ; and if the court is not satisfied from such examination that he is impartial, the juror shall be discharged." This conclusion in the mind of the juror may be established from hearsay ; it may be nothing more than a mere flying report in circulation without any known authority ; or, if used in the sense of hearsay evidence, it may be something more than rumor ; as, where the conclusion is formed from hearing the evidence on another or

former trial, or from conversation with the witnesses, or the party himself, or the conclusion may be arrived at from a knowledge of the facts and circumstances attending the transaction. The examination is not restricted to the juror, but other proof may be heard in testing his qualifications. The obvious intention of the law is to ascertain from the juror, and from others if necessary, how his conclusion was formed and the extent to which it will influence his verdict.

The appellant seeks another trial on the two grounds alleged against the juror, Parr: 1st. Unfitness arising from want of moral qualification; and 2d, that his answer to the question deprived her of the right to challenge for cause.

Whether these objections are well founded or not, cannot be determined from the answer to a single question. He may have been present and heard the evidence on the trial in the examining court without forming such a conclusion as would disqualify him as a juror. For aught that appears, other questions may have been asked and answered, and other proof may have been heard in explanation of the juror's conduct, from which a different conclusion from the appellant's might be drawn. Doubtless, the usual examination took place, though it is not stated. It is not stated that the defendant did not know at the time of the examination, that the juror was present and heard the testimony in the trial before the examining court, nor whether he was objected to or not; nor that she was misled by his answer, nor the state of the challenges, nor that the juror had any bias or prejudice. It is only said that she can now prove the facts to be otherwise than represented by the juror in his answer to the question. It is not shown otherwise than from the defendant's own statement in the motion for a new trial, that the question was put to the juror. The statement of facts found in the record, contains the testimony given on the trial before the jury, but it does not furnish any information on this subject; and in the absence of such information, this court will not undertake to revise the ruling of the District Court. If the defendant was misled by the juror, and did not know of the ground of challenge till after the trial, these points should have been presented by bill of exception, setting forth the evidence and

what occurred on the *voir dire* examination, to the ruling of the court on the motion for a new trial. Lastly, the defendant asks for a new trial, because the verdict of the jury is against the law and evidence.

No objection was made to the charge of the court, nor was any additional charge asked for by the State or the defendant. The law of the case was fully and clearly presented to the jury, and unless the verdict was contrary to the evidence, the judgment ought not to be reversed.

The evidence shows that the stolen property was found on the premises of the defendant within a few days after the commission of the offence. Some of the articles were found in the appellant's bed room up stairs, and identified by the owner, E. Niebour. This evidence relates to a part of the money, to the candles and the coffee. The money was found in her trunk, the coffee in a chest to which no one but the defendant had access, and the candles in the wash stand drawer. Mrs. Niebour says, that the candles made by Fabj had been in her husband's house nearly two years. A part of the stolen money was found under the house, and in the cistern, and some buried in the yard; two blankets and two dresses (ladies') were found in an old closet in the lower part of the house of the defendant. The blankets and dresses were identified and claimed by Mr. and Mrs. Niebour. A pistol was found in the room below, which was occupied by the negro man Jack. It was clearly proved that a theft had been committed, and that a part of the stolen property was found on the premises, in the house of the defendant, and some of the articles in her own private apartment. Her statements at the time were unsatisfactory and contradictory. When her trunk was searched, and some silver found, she said that was all the money she had, but other money, consisting mostly of gold coin, was found in the trunk; and when interrogated as to that, she said it was a few dollars of her private money, and said that her husband could account for it, though it was proved that she and her husband had not lived together for some months previously; but finally stated that he knew nothing about it, and that she had stolen it from him. As insisted by her counsel, it is not clear from the evidence that she concealed the articles found in the

Shaw v. The State.

lower part of her dwelling, and on the premises; that this may have been done by the negro Jack, who was shown to be a bad negro, without her knowledge. Nor is it clearly established that Niebour, the witness for the State and the owner of the property, identified, or could in the nature of the case, identify some of the articles. If her criminality was made to depend alone on that evidence, it would suggest a doubt as to her guilt, but such is not the fact. It is the appropriate province of the jury to weigh the evidence, and unless it appears that their finding is against the evidence, this court has invariably refused to disturb the verdict; the rule being the same in criminal as in civil cases. (See Ables v. Donley, 8 Texas R., 331; Jordan v. The State, 10 Tex., 479; Harrell v. Hill, 15 Tex., 270.) A very strong appeal has been made to grant a new trial, and if it had been shown that injustice had been done the appellant, either in the ruling of the court, or in the verdict of the jury, the humanity of the law would require another trial, but believing otherwise as the case is presented, the judgment must in all things be affirmed.

Judgment affirmed.