## RALIEGH WHITE *v.* THE STATE.

1. NEW TRIAL.— By the Code of Procedure, article 777, all motions for new trials in criminal cases are subjected to the regulations which govern such motions in civil suits. Those regulations are well established and defined, and permit a new trial on account of newly-discovered evidence only when necessary to the ends of justice, and require diligence on the part of the applicant, and that the evidence be material and not merely cumulative. No indulgence is accorded to the negligent, and applications founded on slight circumstances will be promptly overruled. See the opinion *in extenso* on this subject.

2. SAME—PRACTICE.— The Code of Procedure, article 779, enacts that a new trial must be applied for within two days after the conviction,

but provides that "for good cause shown" in a case of felony the trial court may allow the application to be made at any time before the close of the term. This in effect confides to the judicial discretion of the trial court the determination of applications made after the expiration of two days; and therefore the exercise of that discretion will not be revised on appeal unless it has been abused to the appellant's prejudice.

3. Same — Case Stated. — Nearly a month after the appellant was convicted of burglary, he presented to the court below an application for a new trial based on newly-discovered evidence contradictory of the injured party's denial that appellant was his domestic servant. The trial court refused to allow the application to be filed, but the record shows that its merits were considered and passed upon, and nothing indicates an abuse of its discretion by the trial court. *Held*, that no error in the action of the court below is made apparent.

Appeal from the County Court of Dallas. Tried below before the Hon. George N. Aldredge.

The indictment charged that the appellant, about three o'clock in the night of July 16, 1880, burglariously and by force broke into and entered the dwelling-house of F. P. Hord, with intent to commit theft. The jury found the appellant guilty and assessed his punishment at two years' confinement in the penitentiary.

F. P. Hord, the owner and occupier of the house in question, was the only witness introduced by the State. His testimony, though brief, was very much to the purpose. He stated that in the night, and about the hour alleged in the indictment, he was awakened by the outcry of one of his children who slept in the same chamber as himself. As witness raised himself up he saw some one escaping from the chamber into an adjoining room which was used as a kitchen and dining room. Witness instantly got his shot-gun and went into the kitchen, and there found the appellant trying to get out of the door. Witness leveled his gun and made the appellant take a seat, and guarded him until morning, when he took him to the city of Dallas and delivered him into custody. The witness did not see the appellant enter the

sleeping-room, but stated that he must have done so through a window which was found open, though witness was confident that it had been closed the preceding evening. There were valuables in the sleeping-room, and witness found his pants on the floor in a different part of the room from where he left them when he went to bed.

On his cross-examination the witness· denied that the appellant was or ever had been a domestic servant in witness' household. On the contrary, the appellant, at the time in question, was a tenant of witness, and lived in a house about seventy-five yards from the latter's residence.

The defense introduced no evidence at the trial, but, twenty-five days afterwards, applied for a new trial on account of evidence discovered since the conviction. The application and supporting affidavits were elaborate in setting forth the newly-discovered evidence relied on. It consisted in the testimony of two or three persons who, on sundry occasions, had casually seen the appellant at or about the house of the State's witness Hord, performing duties of a menial character.

*W. B. Gano,* for the appellant.

·*Horace Chilton,* Assistant Attorney General, for the State.

Winkler, J. The appellant was tried and convicted in the court below, on November 11, 1880, of burglary. On December, 6, 1880, no motion for a new trial or in arrest of judgment having been entered, he was brought before the court, and, showing no sufficient reason to the contrary, was sentenced to confinement in the State penitentiary for two years, in accordance with the verdict of the jury. On December 9, 1880, application was made by counsel for the defendant for leave to file a motion for a new trial on account of newly-discovered testimony. The

court, on considering the application, refused to permit it to be considered or to allow the motion to be filed. To this action and ruling of the court the defendant excepted and gave notice of appeal.

Whilst the motion for new trial was not permitted to be filed and considered as such, a bill of exceptions reserved to the ruling of the court shows the grounds of the motion, and accompanying affidavits disclose the testimony alleged to have been discovered since the trial, and how it was expected to obtain it, as well as the diligence employed in order to procure it at an earlier day. From these sources of information, and from the evidence adduced on the trial, we conclude that at least one, if not the principal, object to be attained by the new testimony was to discredit the State's witness who testified to the fact that the defendant was not a house-servant of the family occupying the house alleged to have been burglariously entered, by showing the fact to be that the defendant was a domestic servant of the family, and as such servant had a right to enter the premises at pleasure.

We are aware it has been held that a domestic servant of the person from whose house property has been stolen, could not be convicted of theft from a house, *eo nomine*, whilst there was by law such an offense, but, occupying a sort of confidential relation to the family and necessarily entitled to enter the house in order to perform the duties of a domestic servant, on proof of a theft having been committed could only have been convicted of simple theft, to which a milder punishment was fixed by law than to that of theft from a house. *Alston* v. *State*, 41 Texas, 39. Yet we fail to discover that the principle announced in that case has any application to the present inquiry.

By the State's witness it was proved that the defendant was a tenant of the witness, and lived about seventy-five yards from the residence of the witness where the burglary is charged to have been committed, and which house,

agreeably to the testimony, is situated about three miles south of the city of Dallas. The State's witness further testified, on cross-examination, that the defendant was not a domestic servant of his or of the family at the time the offense was committed or at any other time, but was a tenant of the witness, cropping on shares. This much of the testimony against him was certainly known at the time of the trial, if not before, and it is unreasonable to suppose, if the facts were not as testified, that evidence could not have been procured to establish them at a much earlier day than as presented in the motion of the defendant. And further, when the defendant was arrested in the house of the witness in the darkness of night, it is hardly credible to suppose that, if he was in fact a domestic servant, habitually admitted into the house for purposes of his employment, he did not make himself known as such, or that he could not have called some member of the family, or some other tenant or employee about the premises, to show his relation to the family. But, no matter what his relations were, he had no right to enter the house under the circumstances disclosed by the State's witness, without the knowledge or consent of the occupants of the house.

Treating the motion for a new trial as though it had been filed and overruled, and giving the appellant the benefit of that view of the subject, and treating the subject in that light, we are of opinion that it would have been but an ordinary application for a new trial on the ground of newly-discovered evidence. Testing the motion as if it had been filed and overruled, if such had been the action of the court, there would have been no error in overruling the motion and refusing a new trial on the grounds and affidavits set out in and appended to the motion, and we conclude that there was no error prejudicial to the rights of the accused in the refusal of the court to permit the motion to be filed at the time and

under the circumstances attending its presentation.    The new testimony, if material, which is not seen, could certainly have been discovered at an earlier day than that disclosed by the motion, by the use of the most ordinary diligence.    The rules governing motions for new trials on account of newly-discovered evidence ought not ordinarily to be attended with difficulty under Texas laws at this late day.    The provision of the present Code of Procedure, article 777, clause 6, to the effect that motions for new trials on the ground of newly-discovered evidence are to be governed by the same rules as those which regulate civil suits, is but a re-enactment of clause 6, article 672, of the original Code of Procedure (Pasch. Dig. art. 3137), as follows: "Where new testimony material to the defendant has been discovered since the trial, a motion for a new trial based on this ground shall be governed by the same rules as those which regulate civil suits."

In *Shaw* v. *State*, 27 Texas, 752, it was said (the court quoting the language of the Code of Procedure) that a motion on this ground (newly-discovered testimony) is governed by the rules which regulate civil suits.    It was said by this court in *Bronson* v. *State*, 2 Texas Ct. App. 46, on this subject, that the correct doctrine is laid down by the court in *Shaw* v. *State*.    Looking further into the doctrine as laid down in *Shaw's* case, 27 Texas, 750, it is found that the rules governing new trials as the ground of newly-discovered testimony are as deduced by Judge Sutherland in 5 Wend., cited in Graham & Waterman on New Trials, 498, which were adopted as expressing the views of the Supreme Court, and which are as follows: "It has been shown that there are certain principles in relation to such applications which are clearly settled and well defined by long continued practice and an uninterrupted series of decisions in our own and other courts. Those principles are: 1. That a party is bound and presumed to know the general leading points which

will be litigated in his case. 2. That if he omits to procure evidence which with ordinary diligence he might have procured in relation to those points upon the first trial, his motion for a new trial for the purpose of introducing such testimony shall be denied. 3. If the newly-discovered evidence consists merely of additional facts and circumstances going to establish the same points which were principally controverted before, or of additional witnesses to the same facts and circumstances, such evidence is cumulative, and a new trial should not be granted. In cases to which these principles clearly and unquestionably apply, the granting or refusal of a new trial is not a matter of discretion. The parties have a legal right to a decision conformable to these principles. When there is doubt upon the point of negligence, or as to the character of the evidence, or as to its materiality, it becomes a matter of discretion, and the court will not, — perhaps I ought to say cannot, — rightfully interfere."

The rules thus laid down will be found on examination to be in precise accord with Graham & Waterman on New Trials, in the chapter which treats of the subject of granting new trials, "for newly-discovered evidence." Chapter 13, page 462. It is there said, under the head of "general remarks," and corresponding with the principles laid down in *Shaw's* case: "It sometimes happens that after the utmost diligence, and the best directed efforts of the party and his counsel, the true merits of the case have not been submitted by reason of the absence of facts which, had they been known and introduced, would have given a different complexion to the case; or it may be that facts have occurred subsequently to the trial which tend to present the point at issue differently, and to show that the verdict, if suffered to remain, would operate unjustly. When such a case happens, and the court be-

comes satisfied that, to promote the ends of justice, an op-
portunity ought to be allowed for the introduction of new
testimony, it will furnish an opportunity by setting aside
the verdict and directing a new trial. But, to prevent
abuse, practicing with witnesses, careless preparation in
the first instance, and harrassing the court with un-
founded applications, the party moving on the ground of
newly-discovered evidence is required to conform him-
self to very stringent regulations. The negligent are
to expect no indulgence, and applications founded on light
circumstances will be promptly denied. Nothing but a
clear case of injustice, occasioned by means beyond the
control of the party, and the certainty of correcting it by
those means since brought to light and placed within the
reach of the applicant, will answer the purpose. There is,
therefore, no ground on which motions for new trials rest,
better ascertained or more clearly defined, so as to guard
against practice and imposition than that of newly-dis-
covered evidence. By a series of well digested decisions,
it is settled that the evidence which would warrant the
court to set aside the verdict must be new, material and
not cumulative, and that the party applying has used
reasonable diligence." These authors cite Mr. Justice
Woodworth, in *Porter* v. *Talcot*, 1 Cowen, 359, in laying
down the essentials "with brevity and perspicuity," as
follows: "The application for a new trial ought to be
granted, on the ground that there has been reasonable
diligence, that the new evidence is material, that it has
been discovered since the trial, and is not cumulative."
The rules laid down in *Shaw's* case and those laid down
in Gra. & Wat. on New Trials are susceptible of easy
reconciliation with the rules of Mr. Wharton, Crim. L.
§ 3161, and those of Mr. Archbold, in Arch. Crim. Pr.
& Pl. 178–26, cited in *West* v. *State*, 2 Texas Ct. App.
209, and again in *Terry* v. *State*, 3 Texas Ct. App. 236.

See also *Boothe* v. *State*, 4 Texas Ct. App. 202; *Hutchinson* v. *State*, 6 Texas Ct. App. 468, and *Duval* v. *State*, 8 Texas Ct. App. 370.

By a proper application of these rules we are of opinion a new trial should have been refused even if it had been applied for within the two days, the time ordinarily allowed for motions for new trials. The application coming, as it did, nearly a month after the trial, we are of opinion the court did not err in refusing to permit it to be filed at all.

Counsel for the appellant in the brief argue that in felony cases a new trial may be applied for at any time during the term of court at which the trial was had. This is in one sense true. The language of the Code is, " A new trial must be applied for within two days after the conviction, but, for good cause shown, the court, in cases of felony, may allow the application to be made at any time before the adjournment of the term at which the conviction was had. When the court adjourns before the expiration of two days from the conviction, the motion shall be made before the adjournment." Code Crim. Proc. art. 779; Pasch. Dig. art. 3136. There is but slight difference between the phraseology of the present Code in this respect, and that employed before the late revision. That portion of the article which declares that a new trial must be applied for within two days after the conviction, seems to apply as well to felony cases as to misdemeanors, and seems to be mandatory in cases of misdemeanor. That portion which authorizes an application for a new trial in felony cases to be made at any time before the adjournment of the term, by the very language employed indicates very clearly that such an application, when made after the expiration of two days, addresses itself to the sound discretion of the court before which the application is made; *for good cause shown*, the application may be made. Necessarily the court to whom the application

is made out of the regular time must determine whether the cause shown is good or not. Who can determine so well as to the sufficiency of the *cause shown* for permitting the application to be made out of time, as the court before whom the trial was had? In all matters where a discretion is confided to the trial courts to do or not to do a particular thing, it has heretofore not been the practice of this court to interfere unless it be made to appear that the discretion confided to the court below had been improperly exercised, and that too to the prejudice of the party against whom the ruling was made. We see no reason to depart from this rule in cases like the one under consideration. *Linn* v. *LeCompte,* 47 Texas, 440.

We have considered the several objections urged against the charge of the court, but have not discovered any principle of law incorrectly enunciated, or any direction given to the jury which was not applicable to the evidence or calculated to confuse or mislead the jury in applying the law of the case to the facts proved. The material question for our consideration is the refusal of the court to permit an application for a new trial to be filed at the time and under the circumstances disclosed in the defendant's bill of exceptions.

There may doubtless be cases where the court on appeal would be warranted in revising the ruling made by the court below, where the matter is not solely confided to the trial court. *Railway Co.* v. *Forsyth,* 49 Texas, 171. In such a case the action may unquestionably be revised. If the trial court should in this or any other matter abuse the discretion confided to it and the party is prejudiced thereby, this court would feel called on to revise the ruling; and, if the discretion had been abused to the prejudice of the party, and injustice been done or the law improperly administered, would feel called on to set the action aside. Such, however, is not the present case. The material defect in the defendant's application consists

in the immateriality of the new evidence sought to be obtained, and in the palpable want of diligence in not bringing it to light at an earlier day of the term.

We find no material error in the proceedings, and the judgment is affirmed.

*Affirmed.*