## Bud Gray v. The State.

### No. 1428.     Decided February 7, 1912.

### Rehearing denied March 6, 1912.

**1.—Assault to Murder—Charge of Court—Aggravated Assault.**

Where, upon trial of assault with intent to murder, the evidence did not raise the issue of aggravated assault, there was no error in the court's failure to charge thereon.

**2.—Same—Surprise—Motion for New Trial—Newly Discovered Evidence.**

Where appellant complained in his motion for new trial that a new trial should have been granted because of surprise at the testimony of one of his witnesses and of newly discovered testimony, but the record showed that he did not claim surprise at the time said testimony was introduced, and did not show that the alleged newly discovered evidence was not known to him before and at the time of trial, there was no error in overruling the motion.

**3.—Same—Rule Stated—Statutes Construed.**

Under article 817, Code Criminal Procedure, the question of new trial is largely in the discretion of the court, and defendant must show due diligence in not discovering the alleged testimony, and that a different result will be reached, and that the alleged testimony is not simply of an impeaching character, etc.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence sustained the conviction, there was no error.

Appeal from the District Court of Van Zandt. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of assault with intent to murder; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Lively & Stanford* and *Wynne & Wynne,* for appellant.—On the question of newly discovered evidence: Mitchell v. State, 38 Texas Crim. Rep., 170; Barber v. State, 46 S. W. Rep., 233; West v. State, 2 Texas Crim. App., 209; Adams v. State, 10 id., 677; Burns v. State, 12 id., 269; Lindley v. State, 11 id., 283; Moore v. State, 18 id., 212.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—On October 20, 1910, the grand jury of Van Zandt County indicted the appellant for an assault with intent to kill Ulis Bowles, alleged to have been committed on July 3, 1910. The case was tried November 2, 1910, the appellant found guilty and his punishment assessed at four years in the penitentiary.

There is no bill of exceptions to the admission or exclusion of evidence. The only complaint of the charge of the court is that he failed to submit to the jury aggravated assault. The testimony did not call for any such charge. The State's evidence showed that about midnight July 3, 1910, the assaulted party was going from a church to his home. It was a bright moonlight night. That when he got within about 100 yards of his home he passed the appellant, who was on his right, partially concealed in a plum thicket and that the appellant shot at him, striking him with one ball in the thigh of the left leg, missing the bone and passing entirely through the leg. The assaulted party then ran and the appellant shot at him four or five times more while he was running, but did not hit him. He heard the balls pass close to him as the shots were fired while he was running.

Another complaint by appellant is to the overruling of his motion for new trial, claiming that a new trial ought to have been granted because of surprise at the testimony of one of his witnesses and of newly discovered testimony. From the testimony introduced by the appellant himself and from his own testimony, more than that of the State, it was shown that appellant had been living in adultery with one Hester Whittaker for some twelve or thirteen years and had some two or three children by her; that about a year before this occurrence they had fallen out and separated, he testifying that this occurred some eight or nine, or ten months before this; she testifying that it occurred a year or more before. That appellant several times shortly prior to this occurrence and on the night thereof, before it occurred, had tried to get this woman to let him go home from church with her, and to talk to him and she refused. The trend of the appellant's testimony by himself and others, shows that for some time prior to the shooting and up to and on the very night thereof, he was objecting to the woman receiving the attentions of any other man and the indications were that the assaulted party was one of them. The State clearly made out its case. The appellant denied doing the shooting or having anything to do therewith. It was shown and admitted by him that the assaulted party accused him that night of being the one

who had shot him and shot at him. Appellant's claim was that he was at the house of this woman at the time the shooting occurred. He was not in the house, she would not let him come in, she refused to go to the window and to talk to him and refused to go out on the gallery to talk to him, but he was at her house three times that night, from about midnight on. He tried to make it appear that he was at this woman's house talking to her when the shooting occurred and he claimed that he heard it while there and called her attention thereto. She admitted that at one of these times while he was there that night, he asked her if she heard the shots. While she admitted that he asked her this, she denied hearing the shots and denied in effect that they occurred while he was at her house either of these times, talking or attempting to talk to her. It is further shown that soon after the shooting some five or six parties, among them two of his own sisters, a brother-in-law and some other parties came to his house where he was informed that the assaulted party accused him of shooting and shooting at him, and that he denied it and went with them up to the woman's house that night to try to satisfy them that he could establish an alibi by this woman. This is clearly shown by the testimony.

Neither the direct examination by him of this woman, nor the cross-examination by him of this witness nor the reexamination of her by him tends in any way to show that he claimed at the time that he was surprised at her testimony. No motion was then made setting up any such thing and desiring a continuance to procure testimony to contradict this woman on this point.

Article 817 Code Criminal Procedure (old) prescribes: "New trials in cases of felony shall be granted for the following causes and for no other." Subdivision 6 thereunder, giving these grounds, is: "Where new testimony material to the defendant has been discovered since the trial, a motion for new trial based on this ground shall be governed by the same rules as those which regulate civil suits." It is well established by the decisions of this court that a motion for new trial on this ground is closely scrutinized, and is largely confined to the discretion of the trial court; and the disposition there made of it will not be disturbed on appeal, unless it be apparent that the trial court abused its discretion to the prejudice of appellant. Burns v. State, 12 Texas Crim. App., 269; Bell v. State, 1 Texas Crim. App., 598; Templeton v. State, 5 Texas Crim. App., 398; Shaw v. State, 27 Texas, 750; West v. State, 2 Texas Crim. App., 209; Terry v. State, 3 Texas Crim. App., 236.

It is also well established that in a motion for new trial on this ground it is incumbent on the appellant to satisfy the court: 1. That the evidence has come to his knowledge since the former trial. 2. That it was not owing to want of due diligence on his part that it was not discovered and did not come to his knowledge before the trial. 3. That it is competent and material evidence and not merely cumulative, corroborative or collateral. 4. That it will probably produce a different

verdict if a new trial is granted. 5. That it is not simply for the purpose of impeaching a former witness. If the application is defective in establishing any one of these essentials a new trial should be refused. Fisher v. State, 30 Texas Crim. Rep., 502; West v. State, supra; White v. State, 10 Texas Crim. App., 167; Shaw v. State, supra; Duval v. State, 8 Texas Crim. App., 370; Gross v. State, 4 Texas Crim. App., 249; Hutchinson v. State, 6 Texas Crim. App., 468. Many other cases might be cited on both of the questions above stated.

The trial was concluded November 2, 1910, as shown by the record. The next day appellant filed a motion for new trial in effect, solely on the ground that the verdict was contrary to the law and the evidence. Eight days later, on November 11, 1910, he filed a supplemental motion for new trial in which, for the first time, he complains of surprise at the testimony of the woman, his witness, to which is attached the affidavit of Kate Gray, his sister, and Jennie Turner, who are shown to be two of the persons he took with him to said Hester Whittaker's house that night to prove by her his alibi when he claims it first came to his knowledge the night that he was accused of doing the shooting. He not only fails to show that this was newly discovered evidence, but his own testimony on the trial shows that he then knew all of this, at the time and before his trial. It was not newly discovered evidence. He also attaches the affidavits of Ed. and Zeffie Haynes, who show by their affidavit, the next day after the shooting, the woman, Hester Whittaker, in effect stated to them that the assaulted party was mistaken as to appellant's doing the shooting for that she heard the shooting and holloeing and that appellant was at her house at the time the night before. This clearly would be but impeaching testimony of his said witness. He also attaches the affidavit of T. Cornelius, which was to the effect that one night in the fall of 1910, while he and the prosecuting witness were out somewhere picking cotton, the prosecuting witness stated to him that he, the prosecuting witness, was going to do all he could to convict appellant on the charge in this case and that appellant had no shot to beat the case and that he was going to sleep with Hester Whittaker the first night appellant was put in jail, if he should be convicted. This, at most, would be but corroborative evidence of the fact which was substantially established by the testimony of both sides on the trial, that the prosecuting witness wanted, or expected to have something to do with the woman formerly kept by appellant and of whom he was very jealous and the motive for his testimony. This was all sufficiently developed on the trial and there is no probability, even if there was a possibility, that this could have changed, the result of the trial and it was not sufficient ground to require the court to grant a new trial.

Another affidavit attached was that of Peter Jones, who swore that since the prosecution was instituted in this case, the complaining witness in a conversation with him pointed to appellant and stated to

Peter Jones that he wanted to put that negro in the penitentiary, and said, "I will give you five dollars if you will help me to convict him."

. The only other affidavit attached is that of A. H. Haynes to the effect that some time after the prosecution was begun in this case, the complaining witness came to him and proposed to buy a pistol, at the time stating that he wanted to kill some son-of-a-bitch negro. When asked with whom his trouble was, he replied that it was with appellant, who was interfering with and preventing him from going to a certain place just when he wanted to and that he wanted to put appellant out of the way. None of these matters met the requirements of a motion for new trial on the ground of newly discovered evidence in such a way and to such an extent as to justify this court to hold that the lower court violated the discretion confided to it in overruling the motion for new trial. The eminent judge who tried this case, heard all the parties on the trial, heard all these affidavits on motion for new trial and we believe properly exercised his discretion in overruling the motion for new trial.

The only other complaint by appellant's motion for new trial is that the evidence did not justify the conviction. In our opinion the testimony is amply sufficient and there was no error in the court refusing a new trial on that ground.

There being no reversible error the judgment will be affirmed.          -

*Affirmed.*

[Rehearing denied March 6, 1912.—Reporter.]

